Fernando L. SUMAZA and Sumaza & Laborde, Inc., Plaintiffs,

v.

COOPERATIVE ASSOCIATION d.b.a. Esbjerg Andels-Slagteri and/or Celebrity Foods Factory and Atalanta Trading Corp., Defendants.

Civ. No. 737-67.

United States District Court
D. Puerto Rico.

Feb. 28, 1969.

**346**

O'Connor, Calabria & Barney, Hato Rey, P. R., Robert J. Griswold, San Juan, P. R., for plaintiffs.

O'Neill & Borges, Santurce, P. R., for Cooperative Assn. & Esbjerg Andels-Slagteri.

Fiddler, Gonzalez & Rodriguez, San Juan, P. R., for Atalanta Trading Corp.

## ORDER AND MEMORANDUM OPINION

FERNANDEZ - BADILLO, District Judge.

This is a motion by co-defendant Cooperative Association d/b/a Esbjerg Andels-Slagteri to stay proceedings pending arbitration[1] pursuant to 9 U.S.C. § 3.

The relevant facts alleged in the complaint are as follows. Defendant, doing business as Esbjerg Andels-Slagteri and/or Celebrity Food Factory (Celebrity), is a foreign manufacturing and marketing cooperative association having its principal place of business in Esbjerg, Denmark. On October 1, 1960 said defendant and plaintiff Fernando L. Sumaza entered into a written agreement, attached to the complaint, by virtue of which the latter was appointed sole agent for defendant's E A S brand and Celebrity brand canned meat products for Puerto Rico under the terms and conditions there stipulated. On October 19, 1960 Sumaza formed a corporation known as Sumaza & Laborde, Inc. for the sale and warehousing of "Celebrity" products in Puerto Rico. It is charged that on or before October 20, 1966 defendants Celebrity and Atalanta Trading Corporation (Atalanta) conspired to take over plaintiffs' market in Puerto Rico and thus eliminate plaintiffs as sole agent in this area. After such date Celebrity refused to honor orders placed by plaintiffs, failing to satisfy commissions on such orders in the amount of $7,000. By reason of said alleged conspiracy and by reason of the alleged breach without just cause of the sole agency agreement and established trade practices, plaintiffs contend that defendants have violated Puerto Rican Act No. 75, 10 L.P.R.A. §§ 278–278d, wherein plaintiffs are considered as dealer, defendants as principals and the agency agreement and trade relationship as contract.

■ Jurisdiction is invoked solely by reason of diversity of citizenship and defendant Cooperative Association d/b/a Esbjerg Andels-Slagteri (Celebrity) has petitioned this Court for an order to stay the action pending arbitration. The

1. Although said motion was filed on January 17, 1968 and the parties brought their briefs in due time, on account of some error this matter was not submitted to the Court's consideration until September 13, 1968.

agency agreement contains a broad arbitration clause which reads:

> "Eventually arising differences are to be settled with a perfect and mutual understanding. Place of arbitration will be Esbjerg, Denmark."

There is no dispute that the agreement entered into between the parties on October 1, 1960 which contemplated the distribution in Puerto Rico of meat products produced by a Danish corporation is a "contract evidencing a transaction involving commerce" within the meaning of 9 U.S.C. § 2, and therefore, this federal court is bound to apply the Federal Arbitration Act, 9 U.S.C. §§ 1–14.[2] Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, at 404–406, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

■ Since plaintiff is resisting granting of an order that arbitration go forward the Court has the duty to make two initial determinations. First, whether there existed an agreement to arbitrate between the parties, and secondly, whether the *claim or issues raised in the suit* were within the scope of such agreement. Corbin on Contracts, Vol. 6A §§ 1373 to End (1962), Kulukundis Shipping Co. v. Amtorg Trading Corp. (2nd Cir., 1942) 126 F.2d 978, at 986, cited in Necchi v. Necchi Sewing Machine Sales Corp. (2nd Cir., 1965) 348 F.2d 693.

■ The arbitration agreement in the case at bar is a single clause or provision, general in its terms, embodied in the written contract covering the whole transaction—dealer representation of meat products—involved in the dispute. It is an unlimited clause providing for the arbitration of differences eventually arising from the contract. Plaintiffs contend that the words used in the present clause are not binding upon them. They quarrel with the words contained therein because they feel it is very unlikely that this dispute could ever be arbitrated to a "mutual understanding".

As for the word "perfect" it is argued in their brief that "many religious and philosophical thinkers doubt if perfection can exist in our temporal existence on this earth." Thus the arbitration clause is characterized as "vague" and "unreasonable". An arbitration agreement however need not follow a particular form or phraseology. I think it clear that the parties intended to settle their differences by arbitration and did agree upon the arbitration clause mentioned earlier as one of the terms and conditions of the contract entered into on October 1, 1960.

■ Plaintiffs further contend that said 1960 contract between Fernando L. Sumaza and Celebrity was signed prior to the existence of Sumaza & Laborde, Inc. and consequently does not cover the established trade practice referred to in the complaint which existed at the end of their relationship. This contention is shaken by the very allegations of the complaint, specifically by paragraph number 4 which states, and I quote:

> "The business of said Fernando L. Sumaza grew under his efforts and experience so that on 19 October 1960 he formed a corporation for the same purposes of sales, and for the additional purposes of warehousing 'Celebrity' brand products, and this corporation was called 'Sumaza & Laborde, Inc.' and is a Plaintiff herein. *The act of incorporation and the acts of the corporation were ratified by said defendant, 'Celebrity Food Factory,' with the terms of the said sole agent agreement thereafter applying to both Plaintiffs and said Defendant establishing a trade relationship in practice and being."* (emphasis supplied).

Plaintiffs now try to impress upon the Court that the alleged trade practice is something wholly apart and beyond the written distributorship contract of October 1, 1960. This is not in accord with

---

2. There are exceptions to the applicability of the United States Arbitration Act as where there is conflict between said Act and the express provisions of another federal statute. See, for example, Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168. No such conflict is raised in the case before us.

**348**

the facts charged in the complaint. As well said in the case of Tepper Realty Company v. Mosaic Tile Company (D.C. N.Y.1966) 259 F.Supp. 688, at page 692:

" * * * In short, the plaintiffs cannot have it both ways. They cannot rely on the contract, when it works to their advantage, and repudiate it when it works to their disadvantage. To permit them to do so would not only flout equity, it would do violence, we think, to the congressional purpose underlying the Federal Arbitration Act. 'Arbitration agreements are purely matters of contract, and the effect of the bill is simply to make the contracting party live up to his agreement. He can no longer refuse to perform his contract when it become disadvantageous to him.' "

■ Having no doubt as to the existence of the arbitration agreement binding upon both plaintiffs and defendant Celebrity, the Court must now satisfy itself that the issues involved in this suit are referable to arbitration as required by the stay provision of the Federal Arbitration Act, 9 U.S.C. § 3.[3] The issue of arbitrability, i. e., whether a particular dispute falls within the reach of the arbitration clause, being a question of interpretation and construction, the court must reasonably interpret the language of such clause having in mind "the federal policy to construe liberally arbitration clauses, to find that they cover disputes reasonably contemplated by this language, and to resolve doubts in favor of arbitration." Metro Industrial Painting Corp. v. Terminal Const. Co. (2nd Cir., 1961) 287 F.2d 382, at 385. Arbitration clauses are either limited or unlimited in their scope. An unlimited clause provides the parties with knowledge that any dispute which may thereafter arise out of the contract will be settled by arbitration while a limited clause provides for the arbitration of specific types of disputes arising out of a contract. Williston on Contracts, Vol. 6, Revised Edition, § 1923A (1938). The arbitration clause in question is not a narrow, confined clause, but a broad and wide-open undertaking to arbitrate. Certainly the parties can agree to such an undertaking and it is plain from the phrasing of the clause that they intended that all differences[4] or disputes eventually arising from the contract would be submitted to arbitrators. It is not a restrictive clause purported to reach interpretation of the contract only or differences concerning performance or breach alone but rather a sweeping submission of all differences or disputes having its origin in the contract. Such language reasonably contemplates inclusion of the dispute which has now arisen between the contracting parties. Said dispute is based upon the Puerto Rican Dealers Act, supra, for alleged breach or termination of the sole agency agreement and relationship without just cause. In the case of Hilti, Inc. v. Oldach (1st Cir., 1968) 392 F.2d 368, where the agreement was to arbitrate "any controversy or claim arising out of or relating to the breach thereof * * *", the Court refused to construe the clause narrowly saying at page 373:

"Whether the alleged failure to renew plaintiff's dealership was for 'just cause' necessarily turns on the nature of the relationship between the parties, created by mutual agreement and evidenced by the September 8, 1958 contract. It matters not that the statute sued on (Puerto Rico Dealer's Act)

3. "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action un-til such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. July 30, 1947, c. 392, § 1, 61 Stat. 669."

4. The word difference has been defined as disagreement or dispute. 26A C.J.S. p. 939; Words and Phrases, "Difference."

was yet to be enacted. The broad language of the arbitration clause forces us to conclude that the parties intended to arbitrate all disputes arising thereunder irrespective of whether they were foreseeable at the time of agreement." (Parenthesis supplied)

■ Plaintiffs further contend that to arbitrate the "subject matter of Law No. 75—would be to waive the provisions of the Act." The provision of the Act referred to, in the part pertinent hereto, reads as follows:

> "The provisions of this chapter are of a public order and therefore the rights determined by such provisions cannot be waived."

The Court understands that the rights and remedies afforded by the statute are not waived if enforced by arbitration. Whether the dealer relationship was terminated for "just cause" turns, as stated in Hilti, Inc. v. Oldach, *supra*, on the nature of the relationship between the parties evidenced by a contract which contains an arbitration clause reaching such disputes. No showing has been made that the rights to which plaintiffs are entitled under the Act are jeopardized if enforced by arbitration. Plaintiffs merely cite the waiver provision of the Act and conclude that arbitration is contrary to it. There is no indication in the statute that could lead us to conclude that such provision is a bar or limitation upon the arbitration of issues arising under the Act. In the absence of such showing the Court is reluctant to frustrate the strong federal and Puerto Rican policy in favor of arbitration.

■ Finally, it is argued that the Court will have to draft or implement the method of arbitration for the parties.

Plaintiffs do not point to any specific deficiency but contend that "the Court would not only have to order arbitration but would have to designate the terms thereof." As stated earlier in this decision the arbitration clause under consideration is a general, unlimited one covering all disputes eventually arising from the contract. The place of arbitration was fixed as Esbjerg, Denmark. Arbitration in foreign places has been repeatedly upheld, Gutiérrez v. Union Pacific Railroad (10th Cir., 1966) 372 F.2d 121; Amtorg Trading Corp. v. Camden Fibre Mills, 304 N.Y. 519, 521, 109 N.E.2d 606, 607 (1952); International Refugee Organization v. Republic S.S. Corp. (D.C.Maryland, 1950) 93 F.Supp. 798, at 805.[5]

It should be borne in mind that there exists a Treaty of friendship, commerce and navigation entered into between Denmark and the United States which was signed at Copenhagen on October 1, 1951 and entered into force on July 30, 1961, 12 U.S.T. 9080. Said Treaty although not listed in the annotations of 9 U.S.C. § 2 is actually in force between these two nations. See: Treaties in Force, A List of Treaties and Other International Agreements of the United States in Force on January 1, 1968, Department of State of the United States of America, at page 60. Article V, paragraph 2, of the Treaty which facilitates mutual enforcement of arbitration agreements and awards between citizens of either party to such treaty provides as follows:

> "Contracts entered into between nationals and companies of either Party and nationals and companies of the other Party, that provide for the settlement by arbitration of controversies, shall not be deemed unenforceable

---

5. Consider also the recent case of *Hilti*, *supra*, where the Court of Appeals, 1st Circuit, sustaining arbitration in Connecticut, said:
> "Second, the assertion that arbitration proceedings cannot be held outside Puerto Rico conflicts with section 3 of the Federal Arbitration Act which speaks of arbitration 'in accord-

ance with the terms of the agreement'. Third, the parties have chosen Connecticut law to control the arbitration process and it is not apparent to us, given Puerto Rico's own stated interest in encouraging the arbitration of disputes, 32 L.P.R.A. §§ 3201–3229 (1956), that such a designation offends fundamental Commonwealth policy."

within the territories of such other Party merely on the grounds that the place designated for the arbitration proceedings is outside such territories or that the nationality of one or more of the arbitrators is not that of such other Party. No award duly rendered pursuant to any such contract, and final and enforceable under the laws of the place where rendered, shall be deemed invalid or denied effective means of enforcement within the territories of either Party merely on the grounds that the place where such award was rendered is outside such territories or that the nationality of one or more of the arbitrators is not that of such Party."

In view of the foregoing the Motion to Stay Proceedings is hereby granted.

It is so ordered.