**GEMCO LATINOAMERICA, INC., et al., Plaintiffs,**

**v.**

**SEIKO TIME CORP., et al., Defendants.**

**Civ. No. 85–2119 HL.**

United States District Court, D. Puerto Rico.

Dec. 3, 1985.

A. Antonetti, Fiddler, Gonzalez & Rodriguez, San Juan, Puerto Rico, Jay Greenfield, Janet Hoffman, Paul Weiss Rifkind Wharton & Garrison, New York City, for plaintiffs.

McConnel Valdes Kelley Sifre Griggs & Ruiz Suria, (Rafael Perez-Bachs,) John M. Hadlock, Ronald J. Thomas, Whitman & Ransom, New York City, for Seiko Time Corp. and Hattori Corp. of America.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiffs, Gemco Latinoamerica, Inc., (GEMCO), a distributor of Seiko watches and other Seiko products, and José and Carmen Pascual, Gemco owners and shareholders, filed this action on October 10, 1985, against the supplier of Seiko products, Seiko Time Corp. (SEIKO), and Seiko products manufacturer, Hattori Seiko Co., Ltd. and Hattori Corp. of America. Plaintiffs claim that defendants breached the distributorship contract, violated Puerto Rico Public Law 75, 10 LPRA 278, et seq., which protects distributors, and further violated federal and local antitrust laws, 45 U.S.C. sects. 1, 2; 10 LPRA sect. 257 et seq. The Court has jurisdiction of this action under 28 U.S.C. sects. 1331, 1332, and 1337, 15 U.S.C. sect. 15, 22, and 26.

On September 18, 1985, three weeks prior to the filing of this action, defendants herein filed a claim for a declaratory judgment in the Southern District of New York. With exception to the remedy sought by the parties, the issues in these two actions are identical. Seiko, the plaintiff in New York, asks for a declaration by the court that it is not in breach of the distributorship agreement and that it has not violated law 75 or the federal or local anti-trust laws. It also seeks an order by the court compelling Gemco to submit to arbitration pursuant to the distributorship agreement signed in 1974.

In the action before this Court Seiko, the defendant, has filed a motion to transfer this case to the Southern District of New York. Plaintiff, Gemco, has submitted a motion to enjoin arbitration proceedings in New York and opposes the motion to transfer. We decline to rule specifically on Seiko's motion to transfer. Instead, we stay this action until the motions pending before the court in New York—Seiko's motion to enjoin prosecution of this case and Gemco's motion to transfer the case—have been decided. Plaintiffs' motion to enjoin arbitration is denied.

## I. FACTUAL BACKGROUND.

On October 3, 1974, Seiko and Gemco entered into a written distributorship agreement. The contract was drafted by Seiko. It was negotiated in both New York and Puerto Rico and was signed by the parties in San Juan.

The essential provisions of the contract are as follows: Gemco was appointed the exclusive U.S. distributor of Seiko products to retail stores and military exchanges in Puerto Rico. The number of products to be purchased and the sales target figures were set for the years 1974–1975. Gemco was to pay for each shipment "in accordance with the Supplier's then current standard terms of payment." Seiko warranted the products supplied and Gemco was prohibited from altering or deleting the Seiko logo on the package or the product.

The contract was to be construed and governed by the laws of New York. Under paragraph 21, any dispute arising out of or related to the agreement:

shall be settled by arbitration in New York City by three arbitrators appointed in accordance with the Rules of the American Arbitration Association.

Paragraph 3 of the contract provided that the agreement would expire March 31, 1976. Furthermore, according to paragraph 17:

No agreement shall be effective to extend the term of the Agreement unless the same shall be in writing and duly

executed by both parties hereto, and any submission of orders by the Distributor or acceptance or filling of orders by Supplier after the expiration or termination of the Agreement shall not be construed as an extension of said term or as an indication of interest by either party that the Agreement be extended.

All other aspects of the distributorship relationship remained open to negotiation.

The contract was formally extended by a writing effective January 1, 1976 through March 31, 1977, and by a second writing effective January 1, 1977 extending the agreement to March 31, 1978. No formal, written extensions of the agreement were made after 1978.

Despite the formal expiration of the 1974 contract, the distributor-supplier relationship between Gemco and Seiko continued. Gemco remained the U.S. distributor of Seiko products in Puerto Rico. The parties continued annually to negotiate purchase and sales quotas which were submitted in writing. Only slight modifications occurred in the parties' relationship. In 1979 or 1980 Seiko prohibited Gemco from soliciting sales in military exchanges, which had comprised only 5% of Gemco's market, and in 1981 Seiko added a new line of products to the distributorship. In all other respects the business dealings between Seiko and Gemco appear to have remained unchanged.

In May, 1985, Seiko sent Gemco a copy of a proposed contract. This contract was virtually identical to the 1974 agreement except it contained a buy-out provision and the arbitration clause was dropped. In response to this proposed contract, plaintiff José Pascual wrote a letter to Dan Larson, Seiko Vice President in charge of Sales, which began:

"I was surprised to see that Seiko sent me a new distributorship contract which is pre-dated October 1, 1983. We are currently operating under a valid contract for 1985 as the conditions for renewal of the contract signed in 1974 have been met every year, including this year, in agreeing on the target figures.

"At the time that the prior contract was signed with the continental distributors, Mel Fishman (Seiko Vice President in charge of Finance) talked to me and told me it was Seiko's wishes to keep on working with the original contract ..."

Gemco also acknowledged the existence of a contract in a footnote to a 1983–1984 financial statement prepared by an accountant. The footnote read:

"The Company (Gemco) is a party to a distributor agreement effective August 21, 1974 thru March 31, 1976. Although the agreement has not been renewed, the Company and the supplier continue operating considering the agreement to be in effect under the provisions of Puerto Rico's law number 75."

This financial report was required annually by Seiko to determine whether credit should be extended and it was shown to banks to obtain financing.

According to Gemco, the relationship between the parties began to deteriorate in 1980. Gemco claims that Seiko allowed distributors in "parallel" markets to sell Seiko products in Puerto Rico and, at the same time, prevented Gemco from expanding its market into the United States. It is alleged that Seiko's actions severely damaged Gemco's business.

The relationship bottomed out in 1985. Between December, 1984, and May, 1985, Seiko claims to have invoiced and shipped Seiko products to Gemco valued at $2,850,057.47. In the summer of 1985 Gemco advised Seiko that it was unable to pay this debt. Gemco claims that its lack of funds was due to the actions of Seiko preventing them from entering lucrative markets.

The parties attempted to negotiate a resolution to this situation between July and September, 1985. Melvin Fishman, Seiko's Vice President in charge of Finance, came to Puerto Rico for three days in July, 1985 to discuss the situation and determine whether an acceptable finance plan for Gemco could be arranged. Nothing concrete came out of this meeting. Conversations between the parties continued by tele-

phone. On September 15, 1985 Seiko's attorney travelled to Puerto Rico for further discussions. Still no agreement was reached.

In accordance with paragraph 21 of the 1974 agreement, Seiko filed a demand to arbitrate the debt dispute with the American Arbitration Association in New York on September 16, 1985. On September 18, 1985, Seiko filed a declaratory judgment action in the Southern District of New York. Gemco, who claims to have lost the race to the courthouse because it was lulled into believing a resolution would be reached, filed its claim before this Court on October 10, 1985. Seiko has moved the District Court in New York to enjoin Gemco from litigating this action. Gemco has requested the New York court to consider its motion to transfer the case to the district of Puerto Rico. The District Court in New York has not yet ruled on either of these motions.

Before this Court is a motion parallel to the motions presented in New York—Seiko, the defendant here, moves the court to transfer this action to the Southern District of New York; Gemco opposes. In the court's view, the issue presented by Seiko's motion to transfer is not whether this case should be transferred to New York, but whether this Court should be the court to decide the issue.

## II. TRANSFER OF VENUE.

It is well accepted that the forum where an action is first filed is given priority over subsequent actions, unless there is "a showing of balance of convenience in favor of the second action," *Remington Products Corp. v. America Aerovap, Inc.*, 192 F.2d 872, 873 (2nd Cir.1951), or there are special circumstances which justify giving priority to the second, *Joseph Bancroft & Sons Co. v. Spunize Co. of America*, 268 F.2d 522 (2nd Cir.1959). *See Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735 (1st Cir.1977); *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2nd Cir.1969); *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421 (2nd Cir.1965). Furthermore, it has been held:

"Where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action." *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir.1974) (citations omitted.)

These principles are consistent with the doctrine of federal comity which requires the federal district courts to refrain from interfering with each other's affairs. *See Kerotest Mfg. Co. v. c-o-Two Fire Equipment Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); *West Gulf Maritime Assoc. v. Ila Deep Sea Local 24, et al.*, 751 F.2d 721, 728 (5th Cir.1985); *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir.1982). Absent such a rule, there would exist the possibility of conflicting judicial resolutions as well as a duplication of judicial efforts. *Id.*

The court is persuaded by these principles to stay the present action. The parties and issues presented by the law suit here and in New York are identical. Multiple litigation of these claims would clearly serve no purpose of judicial administration and would risk conflicting determinations. Since Seiko filed its claim in the Southern District of New York first, this action is stayed until such a time as Judge Kram, presiding over the New York case, decides Seiko's motion to enjoin plaintiffs from proceeding with this action and Gemco's motion to transfer. Our decision is supported by *Donaldson, Lufkin & Jenrette v. Los Angeles County*, 542 F.Supp. 1317, 1321 (S.D.N.Y.1982), which held that "the district court hearing the first-filed action should determine whether special circumstances dictate that the first action be dismissed in favor of a later-filed action." *See also, Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971).

We have given careful and thoughtful consideration to plaintiffs' allegation of balance of convenience and special circum-

stances. We are also mindful that federal antitrust provisions clearly indicate that Congress intended would-be antitrust plaintiffs to have a broader than usual choice of venue, 15 U.S.C. Section 15, 22; that the majority of the operative facts in this case occurred in Puerto Rico; that many witnesses are in Puerto Rico, and that any need for Spanish translation of local statutory or case law is more easily accommodated here. *See Columbia Pictures Industries, Inc. v. Schneider,* 435 F.Supp. 742 (S.D.N.Y.1977), aff'd. 573 F.2d 1288 (2nd Cir.1978). Yet, the Court feels that these are issues to be weighed by the District Court of New York in deciding whether to keep or transfer this case.

## III. ARBITRATION: INJUNCTION.

We move now to the issue presented by Gemco's motion to enjoin or stay arbitration in New York. This Court can fairly decide this motion without interfering with the principles of federal comity. The question of the arbitrability of the debt owed by Gemco to Seiko was put to this Court before it was raised by either party in the action pending in New York. The parties have fully briefed this issue. On October 25, 1985, a hearing was held on Gemco's motion; evidence was presented and oral arguments were heard. It was expressly stated at the hearing that the sole issue before the Court was the question of arbitration. Neither party at any time challenged the court's authority to hear this matter.

There is no dispute, here, that the distributorship agreement signed by the parties in 1974 is a "contract evidencing a transaction involving commerce" within the meaning of the Federal Arbitration Act, 9 U.S.C. Section 2, and that the contract contained a valid arbitration clause.[1] In enacting sec-

tion 2 of the Federal Arbitration Act, Congress declared a national policy favoring arbitration. *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The Supreme Court stated in *Southland* that Congress "contemplated a broad reach of the Act, unencumbered by State law." As a result of *Southland,* it is probable that state regulations which hinder arbitration are preempted by federal law.

The First Circuit applied this interpretation of the Federal Arbitration Act to invalidate the direct application of section 278b-2 of Puerto Rico Law 75. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 723 F.2d 155 (1st Cir.1983), rev'd. on other grds., — U.S. —, 105 S.Ct. 291, 83 L.Ed. 291 (1984). Section 278b-2 provides:

Any stipulation that obligates a dealer to ... arbitrate ... any controversy that comes up regarding his dealer's contract ... shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void.

*Mitsubishi* held that this provision singling out arbitration agreements is preempted by the Federal law.

We are bound to apply the Federal Arbitration Act in the present case and compel Gemco to submit to arbitration if: 1) we find that the 1974 contract was in effect in 1985 when the dispute arose, and 2) we find that the claim is within the scope of the contract and is arbitrable. *See Sumaza v. Cooperative Assc.,* 297 F.Supp. 345 (D.P.R.1969). Plaintiffs claim that the 1974 distributorship contract expired by the terms of clause 21 following the final for-

1. 9 U.S.C. Section 2 provides in its pertinent part:

"A written provision in any * * * contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See,* Hoellering, Michael F., *Arbitrability of Disputes,* 41 The Business Lawyer 125 (1985).

mal extension of the contract in 1978. We disagree with plaintiff and find that the contract was automatically extended by Puerto Rico's Law 75, and by the conduct of the parties.[2]

■ Public Law 75 provides:

Section 278a. Termination of relationship

' Notwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal (supplier) or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause. 10 LPRA 278a.

The purpose of this law is to protect the interest of commercial distributors working in Puerto Rico. *See Warner Lambert Co. v. Superior Court of Puerto Rico*, 101 D.P.R. 378 (1973). As the House Commerce and Industry Committee stated in the Statement of Motives of Act No. 75:

"The Commonwealth of Puerto Rico cannot remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers, concessionaries, or agents, or without fully eliminating them, such enterprises gradually reduce and impair the extent of their previously established relationships, as soon as these have created a favorable market and without taking into account their legitimate interests." Vol. 18, Part 4, Diario de Sesiones 1724.

The constitutionality of this law as it applies to contracts signed after 1966, the law's effective date, was upheld by the Puerto Rico Supreme Court in *Warner*

*Lambert Co. v. Superior Court of Puerto Rico, supra.*[3]

As a result of section 278a of Law 75 a contractual provision between a supplier and distributor in Puerto Rico which provides for a unilateral right to terminate or not to renew the relationship is null and void as it contravenes the law of Puerto Rico. *See,* Restatement (Second) of Contracts, Sect. 178 (1981). The Supreme Court of Puerto Rico explained in WARNER LAMBERT that "the practical effect of Act No. 75 is to extend the contract indefinitely, unless there is just cause for its termination or unless the principal is willing to pay damages." *Warner Lambert Co., supra,* at 399.

■ The 1974 contract at issue in this case was drafted by Seiko Co., the supplier. Paragraph 21 of the contract provides that the agreement may be extended beyond March 26, 1976, the expressed expiration date, only by a formal writing signed by the parties, and, furthermore, any continuation in the business dealings between the parties is not to be interpreted as an indication of the parties' intent to extend the contract term. This clause is as much in contravention of the law of Puerto Rico as a clause which allows for unilateral termination. Under paragraph 21, Seiko could refuse to renew the agreement without just cause and without compensating Gemco. Law 75 specifically prohibits a principal from "refus[ing] to renew [a] contract on its normal expiration, except for just cause." Paragraph 21 violates this provision of Law 75, and, therefore, is void.

Having voided this provision, the Court agrees with the Puerto Rico Supreme Court that the practical effect of Law 75 is to extend the contract indefinitely. The result in this case, is that the 1974 agreement was extended indefinitely beyond the

**2.** The contract states that it is to be interpreted and construed under the law of New York. Here, however, the issue is not one of interpretation or construction, but whether the contract was in effect in 1985. This issue is decided under the law of Puerto Rico since the contract was negotiated here, in part, was signed here and was performed here.

**3.** Gemco's motion presents the Court with a unique case. Here, the supplier (principal), Seiko, relies on the protection of Law 75 to establish that the 1974 contract was automatically extended and was in effect in 1985, while the distributor, Gemco, argues against this interpretation of the statute. '

final formal extension in 1978 and was in effect in 1985 when the dispute between the parties arose.

■ The court does not mean to imply by this decision that a supplier and distributor are tied to a contract for life. The parties could mutually agree to terminate the relationship or could create a novation either in writing or through their actions. A contract is extinguished by a novation if a new agreement expressly declares that it replaces the former agreement or the old and new agreements are incompatible in all points.[4] Here, there is clearly no novation. No writing exists which expressly replaces the 1974 agreement and, most importantly, the business dealing of the parties remained essentially unchanged. *Warner Lambert Co. v. Superior Court*, 101 D.P.R. at 389–90.

■ The conduct of the parties indicates that they intended to extend the contract. To determine the intention of the parties to a contract the Court must look to the parties' acts contemporaneous and subsequent to the contract.[5] Here, Gemco and Seiko continued their business dealings without altering the essence of the relationship, Gemco continued to be the U.S. distributor of Seiko products in Puerto Rico, they annually negotiated purchase and sales quotas and the manner of payment for the products and payment of a commission based on sales remained the same. Furthermore, Gemco indicated in a May 15, 1985 letter to Seiko it believed that the original contract was still in effect. Gemco also implied in a financial statement for the years 1983 and 1984 that the parties were acting pursuant to a contract. This financial statement was used to obtain an extension of credit from Seiko and to present it to banks in order to obtain financing.[6] The

statement of the court in *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F.Supp. 688, 692 (D.C.N.Y.1966) seems appropriate here:

"* * * In short, the plaintiffs cannot have it both ways. They cannot rely on the contract, when it works to their advantage, and repudiate it when it works to their disadvantage. To permit them to do so would not only flout equity, it would do violence, we think to the congressional purpose underlying the Federal Arbitration Act. 'Arbitration agreements are purely matters of contract, and the effect of the bill is simply to make the contracting party live up to his agreement. He can no longer refuse to perform his contract when it become disadvantageous to him'."

Cited in *Sumaza v. Cooperative Assoc.*, 297 F.Supp. 345 (D.P.R.1969).

■ The sole claim that Seiko has submitted to arbitration in New York is the dispute over the debt allegedly owed by Gemco. This dispute is clearly related to the distributorship agreement between the parties and is an arbitrable claim.

WHEREFORE, upon consideration of the testimonial and documentary evidence, briefs and argument of counsel, it is hereby ORDERED that Gemco's petition for a preliminary injunction to enjoin arbitration proceedings before the American Arbitration Association is DENIED; and it is further

ORDERED that these proceedings shall be stayed until Seiko's and Gemco's transfer motions before the United States District Court for the Southern District of New York, Civil No. 85–7388 (SWK), are ruled upon.

IT IS SO ORDERED.

---

**4.** Article 1158 of the Civil Code of Puerto Rico, 31 L.P.R.A. 3242, provides: "In order that an obligation may be extinguished by another which substitutes it, it is necessary that it should be so expressly declared, or that the old and new be incompatible in all points."

**5.** Article 1234 of Puerto Rico Civil Code, 31 L.P.R.A. 3472 reads: "In order to judge as to the intention of the contracting parties, attention

must principally be paid to their acts, contemporaneous and subsequent to the contract."

**6.** *See Federal Deposit Ins. Corp. v. Cardona,* 723 F.2d 132, 137 (1st Cir.1983), for the proposition that the acknowledgement of a debt in a company's annual report has been held sufficient to remove the bar of the statute of limitations.