**HARLEY–DAVIDSON MOTOR COMPANY, Plaintiff,**

v.

**MOTOR SPORT, INC., Defendant.**

No. 96–C–1038.

United States District Court, E.D. Wisconsin.

May 26, 1998.

---

is non-exclusive such that it has the right to appoint a second distributor in Puerto Rico.

Presently before the court are the parties' cross-motions for partial summary judgment. In its motion, Harley–Davidson argues that it is entitled to summary judgment with respect to its claim that the parties' 1980 distributorship agreement continues to govern the relationship between the parties and that such relationship remains non-exclusive. In addition, Harley–Davidson seeks summary judgment dismissing Motor Sport's counterclaim for wrongful termination and constructive discharge.

On the other hand, Motor Sport argues that the 1980 distributorship agreement is not applicable to the existing relationship between the parties. Instead, Motor Sport seeks partial summary judgment in its favor with respect to its claim that the parties' distributor relationship has been developed through the parties' course of dealings since November 1994, the terms and conditions of which are to be evidenced at trial.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted when there are no genuine issues of material facts and the movant is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. In order to succeed on a motion for summary judgment, the movant must show the following: (1) no genuine issue of material fact exists; and (2) its entitlement to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only "genuine" issues of "material" fact will defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

As defined by the United States Supreme Court, "material" facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." Id., at 248, 106 S.Ct. 2505. A dispute over such facts is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "A party opposing a

Peter J. Stone, Marti L. Schreier, Foley & Lardner, Milwaukee, WI, for plaintiff.

Hector Saldana Egozcue, Saldana & Vallecillo, PSC, Hato Rey, PR, K. Scott Wagner, Hale, Skoglind & Wagner, S.C., Milwaukee, WI, for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

On September 10, 1996, the plaintiff, Harley–Davidson Motor Company ["Harley–Davidson"] commenced this diversity action seeking a declaratory judgment regarding its rights pursuant to a distributorship agreement with the defendant, Motor Sport, Inc. Pursuant to the plaintiff's October 6, 1997, amended and supplemental complaint, Harley–Davidson seeks a declaration that it has not violated its distributorship agreement with the defendant, that Harley–Davidson has not violated any duties or responsibilities it may have toward Motor Sport, that Harley–Davidson may properly terminate its relationship with the defendant, and, alternatively, that its relationship with Motor Sport

properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial.' " *Id.* (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). If the evidence presented is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Id.* at 249–250, 106 S.Ct. 2505.

In addition, under Rule 56(d), Federal Rules of Civil Procedure, the court is permitted to enter partial summary judgment where "judgment [under Rule 56] is not rendered upon the whole case or for all of the relief asked . . . ."

### III.  UNDISPUTED FACTS

As required under Local Rule 6.05(a), the plaintiff included with its motion for summary judgment proposed findings of fact which it believed constituted the factual propositions upon which there is no genuine issue of material fact. The defendant filed a response to the plaintiff's proposed findings which contested many of the factual propositions offered by the plaintiff. However, the defendant's submission was deficient in that it failed to identify evidentiary material to support its claim that a dispute exists as required under Local Rule 6.05(b)(1). Upon deciding a motion for summary judgment, the court will conclude that there is no genuine issue of material fact as to any proposed finding of fact to which no proper response is set out. *Stewart v. McGinnis*, 5 F.3d 1031, 1034 (7th Cir.1993), *cert. denied*, 510 U.S. 1121, 114 S.Ct. 1075, 127 L.Ed.2d 393, (1994); *National Acceptance Co. of America v. Regal Products, Inc.*, 838 F.Supp. 1315, 1317 (E.D.Wis.1993); Local Rule 6.05(d). Moreover, with respect to its own motion for partial summary judgment, the defendant did not submit the proposed findings of fact mandated by Rule 6.05(a).

In view of the above, the plaintiff's proposed findings of fact are deemed undisputed with regard to the present motions. Harley–Davidson's corporate predecessor—AMF Harley–Davidson, Inc.—entered into a series of distributorship agreements with Motor Sport in or about 1975, each of which granted Motor Sport the non-exclusive right to distribute and sell Harley–Davidson motorcycles, parts and accessories in Puerto Rico. The most recent distributorship agreement was executed on December 1, 1980, and states, in relevant part:

1. *Appointment:* HDI hereby appoints the DISTRIBUTOR [Motor Sport] its non-exclusive distributor for the distribution, sale and service of the PRODUCTS, defined in paragraph 3 hereof, in the TERRITORY described in paragraph 2 hereof, all in accordance with and subject to the terms, conditions, reservations and limitations hereinafter set forth.

DISTRIBUTOR hereby accepts such appointment and agrees to use its best efforts to promote the distribution and sale of the PRODUCTS in the TERRITORY and to provide full and adequate service therefore.

2. *Territory:* The territory to which this Agreement applies shall be as follows: Puerto Rico.

\*        \*        \*        \*        \*        \*

22. *Terms and Termination of Agreement:* Unless sooner terminated as provided below, this Agreement shall expire on December 31, 1981.

\*        \*        \*        \*        \*        \*

24. *Former Agreements and Waiver, Modification or Assignment of this Agreement* . . . . [AMF Harley–Davidson, Inc.] may not assign this Agreement or any right or obligation hereunder without the written consent of the DISTRIBUTOR; provided, however, that [AMF Harley–Davidson, Inc.] may assign this Agreement, or divide the same up by PRODUCT, TERRITORY and/or manufacturer, and assign the whole, or any part resulting from such division to any corporation affiliated with [AMF Harley–Davidson, Inc.] (i.e.—any corporation which owns or is owned by HDI, or shares a common owner with HDI).

Since executing the distributorship agreement on December 1, 1980, neither Harley–Davidson nor any corporate predecessor has entered into any new distribution agreement

with Motor Sport. Neither Harley–Davidson nor any corporate predecessor has ever entered into any agreement—written or oral, express or implied—with Motor Sport modifying the non-exclusive nature of Motor Sport's Harley–Davidson dealership. Motor Sport has not identified any written, oral or other evidence that Harley–Davidson or its corporate predecessors ever expressed an intent to grant Motor Sport an exclusive distributorship.

Without interruption, Motor Sport has continued as a Harley–Davidson dealer since 1975. Harley–Davidson has continued to do business with Motor Sport and to fulfill all of its obligations to Motor Sport. The relationship between Harley–Davidson and Motor Sport has not been terminated.

The changes that have taken place since 1980 in the identity of the entity that has owned the Harley–Davidson business are changes that did not interrupt or substantially affect Motor Sport's Harley–Davidson's dealership. Arturo and Hector Fossas became the owners of Motor Sport in 1988.

In addition to Harley–Davidson products, Motor Sport sells a variety of Yamaha and other brand personal watercraft, powerboats, sailboats, ATV's generators and musical instruments. The sale of Harley–Davidson motorcycles, parts and accessories account for only 15% of Motor Sport's total revenues.

## IV. ANALYSIS

### A. Applicability of Puerto Rico Dealer's Act

The defendant's motion for partial summary judgment seeks, in part, a declaration "that the Puerto Rico Dealer's Act governs the relationship between the parties to this action." The plaintiff acknowledges that the Puerto Rico Dealer's Act, otherwise known as Puerto Rico Law 75 ["Law 75"] is applicable to the case at hand. (Plaintiff's Brief in Opposition to Defendant's Motion for Partial Summary Judgment, p. 1.) Therefore, the defendant's motion for partial summary judgment will be granted to the extent that it seeks a declaration that Law 75 governs the distributor relationship between the parties in this case.

### B. Relevant Terms of the Business Relationship

It is undisputed that the 1980 distributorship agreement unambiguously granted Motor Sport a non-exclusive distributorship. However, that agreement expired by its own terms on December 31, 1981. Notwithstanding the termination of the written contract, the parties continue, to date, to maintain a business relationship. The issue facing the court is to determine the terms that govern this business relationship.

Harley–Davidson argues that in accordance with Law 75, their relationship is governed by the terms of the 1980 agreement notwithstanding its expiration on December 31, 1991. Motor Sport, on the other hand, contends that even though its dealership with Harley–Davidson has continued uninterrupted since 1975, the assignment of the 1980 agreement from AMF Harley–Davidson, Inc. to a corporate predecessor of Harley–Davidson and ultimately to Harley–Davidson itself did not constitute a valid assignment under Section 24 of the 1980 agreement as it was made without Motor Sport's written consent. As a result, Motor Sport asserts that the 1980 agreement is not applicable to its current relationship with Harley–Davidson.

The termination of a dealership arrangement under Law 75 is governed by § 278a, which provides:

> Notwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause.

Puerto Rico Public Law 75, P.R.Laws Ann. Tit. 10 § 278a. The practical effect of this statutory provision is to "extend the contract indefinitely, unless there is just cause for its termination or unless the principal is willing to pay damages." *Gemco Latinoamerica, Inc. v. Seiko Time Corp.,* 623 F.Supp. 912, 918 (D.C.Puerto Rico 1985), quoting *Warner Lambert Co. v. Tribunal Superior De Puerto Rico,* 101 D.P.R. 378, 399 (1973).

Similar to the factual situation facing the district court in *Gemco*, the instant case is unlike most cases involving the invocation of Law 75. Here, the principal, Harley–Davidson relies on the protection of Law 75 to demonstrate that the 1980 agreement was automatically extended and governs the parties' current business relationship while the dealer, Motor Sport, argues against automatic extension of the 1980 agreement. *Gemco*, 623 F.Supp. at 918 n. 3.

Harley–Davidson contends that under Law 75, the 1980 dealership contract extended beyond its normal expiration date of December 31, 1981, and is applicable to its relationship with Motor Sport because at no time was there "just cause" to terminate the contract. Further, it argues that any contention by Motor Sport that succession of the 1980 agreement by Harley–Davidson effectively voided or terminated the agreement's terms mischaracterizes the law and the facts.

■ As stated previously, Motor Sport argues that the 1980 agreement is no longer applicable to the relationship between the plaintiff and defendant because the 1980 agreement was not validly assigned by AMF Incorporated to the plaintiff or its corporate predecessors. Specifically, Motor Sport maintains

> Upon execution of the Purchase Agreement between Harley Acquisition Corporation and AMF Incorporated, the later was unable to perform its duties and obligations toward Motor Sport, Inc under the December 1, 1980 Distributorship Agreement. Such situation caused a breach by AMF Incorporated which resulted in the termination of the agreement under Puerto Rico law. .

(Defendant's Brief in Response to Plaintiff's Motion for Summary Judgment, p. 4.) In other words, Motor Sport contends that under the terms of the 1980 agreement, the assignment of the contract by Harley–Davidson's corporate predecessor without obtaining Motor Sport's written consent automatically terminated or voided the agreement.

The problem with Motor Sport's argument is that it ignores the fact that Law 75 supercedes the contractual limitations contained in the 1980 agreement to the extent that it can

be said to permit termination of the agreement without just cause. Regardless of the limitations set forth in a dealership agreement, if "just cause" to terminate that agreement does not exist the contractual provision is futile under Law 75. *See Id.* at 918. Thus, Motor Sport can prevail on its argument that the 1980 agreement was validly terminated by the assignment only if such assignment without Motor Sport's written consent constitutes "just cause."

As noted previously, this case is unique because it is the principal, Harley–Davidson, that is seeking the protection of Law 75. In such a situation, I believe the "just cause" inquiry turns upon whether Harley–Davidson's own omission—failure to obtain Motor Sport's written consent for assignment—would have provided "just cause" for Harley–Davidson itself to have terminated the dealership. If it would not have, then surely such omission does not amount to just cause when the grantor is seeking to declare the contract terminated. For, as noted by the district court for the district of Puerto Rico, "the [grantor] cannot have it both ways. They cannot rely on the contract, when it works to their advantage, and repudiate it when it works to their disadvantage." *Gemco*, 623 F.Supp. at 919 (quoting *Sumaza v. Cooperative Assoc.*, 297 F.Supp. 345 (D.P.R.1969)).

Motor Sport cites no case law demonstrating that an assignment without written consent, even where the dealership agreement contains such a limitation, constitutes "just cause." On the other hand, Harley–Davidson relies on Puerto Rico case law regarding the doctrine of "novation" to argue that a party substitution of this type does not constitute just cause.

According to the district court for the district of Puerto Rico, the substitution of parties to a contract does not void the contract or constitute grounds for termination (i.e., an extinctive novation of the contract) unless the parties have expressly so stated or there is complete incompatibility between the original agreement and the agreement as modified as a result of the substitution. *Nieves Domenech v. Dymax Corp.*, 952 F.Supp. 57, 63 (D.Puerto Rico 1996).

I find the case law cited by Harley–Davidson to be instructive on the issue before me. There is no evidence in the record that the parties expressly stated that a substitution of parties to the contract through assignment or otherwise would automatically result in termination of the 1980 agreement. Nor is there evidence that the parties expressly stated their intention to extinguish the 1980 agreement when any of the transfers of corporate ownership occurred. Section 24 of the 1980 agreement itself which limits Harley–Davidson's right to assign the contract does not state what, if any, consequence would occur if Harley–Davidson did not obtain Motor Sport's written consent to assign the contract.

Furthermore, the undisputed facts reveal that the "modified" agreement which occurred as a result of the changes in ownership of the Harley–Davidson business was not incompatible with the original agreement. In fact, the evidence shows that the only change in the agreement was the identity of the principal. Motor Sport has continued as a Harley–Davidson dealer since 1975, and Harley–Davidson has continued to do business with Motor Sport and to fulfill its obligations to Motor Sport. There is no evidence now before this court that the change in ownership altered the rights of Motor Sport or Harley–Davidson or that such parties' obligations under the agreement were extinguished.

■ Accordingly, I find that assignment of the 1980 agreement by AMF Incorporated to Harley–Davidson's corporate predecessor and ultimately the assignment of the agreement to Harley–Davidson without written consent of Motor Sport does not constitute "just cause" for termination of the 1980 agreement as required under Law 75. Thus, Harley–Davidson is entitled to summary judgment on its claim that the 1980 agreement governs the current business relationship of the parties.

## C. Exclusivity/Non–Exclusivity of Distributor Relationship

■ Having determined that the terms of the 1980 agreement are presently in effect, I must now determine the nature of the parties' business relationship. It is undisputed that the paragraph 1 of the 1980 agreement appointed Motor Sport as the "non-exclusive distributor" of Harley–Davidson motorcycles, parts and accessories. Motor Sport attempts to get around the unambiguous language of the contract by arguing that the parties' relationship is governed by their course of dealings and not the terms of the 1980 agreement as a result of the transfers in corporate ownership of Harley–Davidson. I have already rejected this argument in the preceding section of this decision.

To the extent that Motor Sport is arguing that Law 75 converts the non-exclusive dealership to an exclusive one as a result of Harley–Davidson's failure, to date, to exercise its right to appoint additional distributors, such argument is also without merit. "Law 75 does not operate to convert nonexclusive distribution contracts into exclusive distribution contracts. . . . the Act only protects against detriments to contractually acquired rights." *Vulcan Tools of Puerto Rico v. Makita U.S.A., Inc.*, 23 F.3d 564, 569 (1st Cir.1994). This is true even if the existing distributor suffers economic harm as a result of the appointment of additional distributors. *Id.*

In my opinion, the clear and unambiguous language of the 1980 agreement provides that Motor Sport was granted a non-exclusive distributorship such that Harley–Davidson has the right to appoint additional distributors in Puerto Rico. Law 75 does not alter the non-exclusivity of the parties' contract. Harley–Davidson is therefore entitled to summary judgment in its favor on this issue.

As an additional matter, the court notes that even if it had concluded that the 1980 agreement did not govern the parties' business relationship as alleged by Motor Sport, the undisputed facts show that Motor Sport was not granted an exclusive dealership. As a result of Motor Sport's failure to comply with Local Rule 6.05, the court was obliged to accept Harley–Davidson's proposed findings of fact, including the findings that the parties have never entered into any agreement, written or oral, express or implied,

which modified the non-exclusive nature of the dealership. Such finding completely undermines Motor Sport's unsubstantiated assertion that the parties' course of dealings established an exclusive distributorship.

### D. Motor Sport's Counterclaim for Wrongful Termination

 Harley–Davidson seeks dismissal of the defendant's counterclaim alleging wrongful termination on the ground that the parties' business relationship has not been terminated. While it is undisputed that no termination has occurred, Harley–Davidson's argument ignores the fact that Motor Sport's counterclaim is not merely a claim for wrongful termination. The counterclaim also alleges that Harley–Davidson has constructively discharged Motor Sport by opposing Motor Sport's desire to open more stores to sell Harley–Davidson products and by limiting Motor Sport's sales of Harley–Davidson products. (Answer to Amended and Supplemental Complaint, Affirmative Defenses, and Counterclaim, ¶¶ 9–11.) The fact that the existing distributorship has not yet been terminated, without more, does not entitle Harley–Davidson to summary judgment as a matter of law on the portion of the defendant's counterclaim alleging constructive discharge. Accordingly, this portion of Harley–Davidson's motion for summary judgment will be denied.

Therefore, IT IS ORDERED that Motor Sport's motion for partial summary judgment be and hereby is granted to the extent that Motor Sport is entitled to a judgment declaring that Law 75 governs the distributor relationship between the parties in this case; in all other respects, Motor Sport's motion for partial summary judgment be and hereby is denied.

IT IS ALSO ORDERED that Harley–Davidson's motion for partial summary judgment be and hereby is granted, in part, and denied, in part.

IT IS FURTHER ORDERED that Harley–Davidson be and hereby is entitled to summary judgment declaring that the 1980 agreement governs the current business relationship between the parties.

IT IS FURTHER ORDERED that Harley–Davidson be and hereby is entitled to summary judgment declaring that its relationship with Motor Sport is non-exclusive such that it has the right to appoint additional distributors in Puerto Rico.

IT IS FURTHER ORDERED that the portion of Harley–Davidson's motion for partial summary judgment seeking dismissal of Motor Sport's counterclaim be and hereby is denied.

IT IS FURTHER ORDERED that each party be and hereby is directed to bear its own costs associated with these motions.