[NOT FOR PUBLICATION] 

United States Court of Appeals
For the First Circuit


No. 96-1888

GRAPHICS SUPPLY, INC.,

Plaintiff, Appellant,

v.

POLYCHROME CORPORATION, ET AL.,

Defendants, Appellees.


APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge] 


Before

Torruella, Chief Judge, 
Coffin, Senior Circuit Judge, 
and Stahl, Circuit Judge. 



Francisco M. Troncoso for appellant. 
Carlos M. Sanchez La Costa with whom Pedro J. Santa-Sanchez 
was on brief for appellees.



June 23, 1997


COFFIN, Senior Circuit Judge. This appeal concerns the 

nature of the relationship between two corporate entities.

Appellant Graphics Supply contends that an exclusive

principal/dealer relationship existed between it and Polychrome

Corporation, which was impaired by Polychrome's actions,

allegedly in violation of Puerto Rico's Dealer Act. The district

court granted summary judgment for Polychrome. We affirm.

FACTS 

The two parties in the instant appeal are a manufacturer of

lithographic supplies, Polychrome Corporation ("Polychrome"), and

a Puerto Rico dealer of these supplies, Graphics Supply, Inc.

("Graphics"). Graphics contends that an exclusive dealer 

relationship existed between the two entities, and that

Polychrome took a series of actions that impaired the

relationship, thereby violating Puerto Rico's Law 75, "the

Dealer's Act," 10 L.R.P.A. 278. We review the pertinent facts

in the light most favorable to Graphics. See Grenier v. Cyanamid 

Plastics, Inc., 70 F.3d 667, 671 (1st Cir. 1995). 

Graphics has served as a dealer for Polychrome in the Puerto

Rico market since 1975. On January 1, 1989, a new Dealer

Agreement was executed between the two (the "Dealer Agreement"),

defining their arrangement as a standard dealer relationship. 

While Graphics initially protested signing this new Agreement,

contending that it wished to continue the exclusive relationship

-2-

it maintained existed between the two, Graphics eventually

capitulated, at least partially in response to a letter from

Polychrome's vice president for legal affairs, Barbara Cane,

indicating that the two companies had never had an exclusive

relationship and that Graphics' failure to sign the standard

dealership agreement might result in a termination of the

relationship altogether.1 Graphics asserted that it was assured

by individuals at Polychrome that an exclusive relationship would

continue to exist, the new Agreement notwithstanding; Polychrome

disagrees with this assertion. However, as of April 26, 1996,

Graphics concedes that this is a non-exclusive agreement, and

does not contend there were private assurances. 

The dealings between the two companies apparently

deteriorated over the following years, with Graphics contending

that Polychrome improperly approached clients directly, and that

Polychrome failed to keep Graphics adequately supplied, leading

to losses by Graphics. Graphics eventually filed suit against

Polychrome, alleging violation of the Puerto Rico Dealer's Act,

breach of contract, and tortious interference with the

 

1 Graphics cites as support for its contention that an
exclusive relationship had previously existed a 1980 letter from
James M. Graves, executive vice president of Polychrome, to Peter
Javier, president of Graphics. This letter (which confirmed the
substance of a meeting between Graves and Javier in New York)
stated that Polychrome would not actively pursue additional
distributors in Puerto Rico, and that Polychrome could continue
to sell its products to another Puerto Rico company. It did not,
however, state that the relationship between the two would be
exclusive. 

-3-

contractual relationship between Graphics and two of its

employees.

The district court initially granted Polychrome's Motion for

Summary Judgment on four of the six counts brought by Graphics,2

but refused to grant summary judgment on the remaining two 

counts, stating that there was a genuine issue of material fact

on Count IV, and that Count VI could not be dismissed where Count

IV survived.3 However, the district court, on Polychrome's

motion for reconsideration, with little explanation for its

actions, subsequently granted summary judgment on these counts as

well. This appeal by Graphics followed.

DISCUSSION 

1. Standard of Review. 

Our review of the district court's grant of summary judgment

is de novo. See Hachikian v. FDIC, 96 F.3d 502, 504 (1st Cir. 

 

2 These four counts were as follows: Count I: tortious
interference by Polychrome with Graphics' contractual
relationship with two of its employees; Count II: tortious
interference by Polychrome with Graphics' business operations
through a series of actions; Count III: violation of Law 75 by
Polychrome by selling its products directly to several of its
customers in Puerto Rico; and Count V: violation by Polychrome
of Law 75 by negotiating with potential distributors in the
Dominican Republic.

3 Count IV alleged that Polychrome breached their
contract by purposely failing to supply ordered merchandise;
Count VI alleged that Polychrome failed to honor debit notes
submitted by Graphics to Polychrome. 

-4-

1996). We may affirm on the grounds cited by the district court,

or on any independently sufficient ground. See Garside v. Osco 

Drugs, Inc., 895 F.2d 46, 49 (1st Cir. 1990).  

Graphics appeals three issues: first, the district court's

determination that a non-exclusive relationship existed between

Polychrome and Graphics;4 second, the grant of summary judgment

on Count IV; and finally, the grant of summary judgment on Count

VI. We address each in turn. 

2. Nature of the Dealer Agreement. 

As noted above, Graphics contends that the district court

erred in concluding that the parties did not have an exclusive

relationship. Our starting point in reviewing this determination

must be the language of the Dealer Agreement between Graphics and

Polychrome, as it is well established that the interpretation of

such a contract under Puerto Rico law is limited to the terms of

the Agreement, barring ambiguities in those terms or apparent

inconsistency with the contracting parties' intent. See Borschow 

Hosp. & Medical v. Cesar Castillo, 96 F.3d 10, 15 (1st Cir. 

1996); see also Vulcan Tools of Puerto Rico v. Makita USA, Inc., 

23 F.3d 564, 567 (1st Cir. 1994); Marina Ind. Inc. v. Brown 

 

4 Graphics casts this issue as an appeal on Counts III &
V; Polychrome, on the other hand, addresses this issue as
relating to Counts II and III. The district court, for its part,
primarily addressed this issue in its discussion of Count III.

-5-

Boveri Corp., 114 P.R. Offic. Trans. 64, 72 (1983). Indeed 

Article 1233 of the Puerto Rico Civil Code provides:

If the terms of a contract are clear and leave no
doubt as to the intentions of the contracting
parties, the literal sense of its stipulations
shall be observed. If the words should appear
contrary to the evident intention of the
contracting parties, the intention shall prevail. 
31 L.R.P.A. 3471 (1991).

The 1989 Dealer Agreement between Graphics and Polychrome states

in section 1, "Purpose of Agreement": 

The purpose of this Agreement is to set forth the
relationship of Polychrome and dealer and to
reduce to writing their entire Agreement. 
Polychrome agrees to sell to dealer, on a 
non-exclusive basis, such of the Polychrome 
Products of the Printing Division (Polychrome
Products) that from time to time Polychrome may
elect to make available to the Dealer (emphasis
added).

The language of the Agreement unambiguously states that the

relationship established is a non-exclusive one. Furthermore,

the Agreement stipulates that it constitutes the full Agreement

between the parties. See Borschow, 96 F.3d at 16 (integration 

clause nullifies any other oral or written understandings reached

between the two parties).5 In addition to these terms, the
 

5 We note that the conduct in Borschow was much more 
egregious than that alleged here. Here, there is a dispute as to
whether Polychrome ever made representations to Graphics that an
exclusive relationship between the two was either intended or
contemplated. In Borschow, the manufacturer's representative 
explicitly assured the dealer that an exclusive relationship was
intended, notwithstanding the non-exclusive language in the
contract between the two, and the representative subsequently
sent the dealer a document to that effect. See Borschow Hosp. & 
Medical v. Cesar Castillo, 96 F.3d 10, 12-13 (1st Cir. 1996). 
However, even in that situation, the court adhered to the

-6-

Agreement contains other terms indicating that a non-exclusive

relationship is contemplated. For example, it explicitly

reserves to Polychrome the right to sell directly to any class of

customers and to appoint other dealers.

Graphics offers several theories as to why we should

disregard the Dealer Agreement's clear terms and find instead

that an exclusive relationship existed: the company alleges that

an earlier, 1980 agreement established an exclusive arrangement;

it claims that the new Agreement was signed under duress; and

most importantly, it alleges that the non-exclusive agreement was

either altered or replaced by a new one reflected in a January 1,

1992 letter from a Polychrome official to Graphics. 

We note at the outset that much of the information upon

which Graphics hangs its hat is patently inadmissible since the

language of the Agreement is clear. See Borschow, 96 F.3d at 

15-16 (Puerto Rico Civil Code and parol evidence rule both

preclude reference to extrinsic evidence where contract terms are

clear). It is therefore unnecessary to dwell on these

allegations; however, we choose to dispose of them briefly.6

The January 1, 1992 letter, which Graphics suggests is

either a novation or a substitution of an exclusive Agreement for

the non-exclusive one created by the Dealer Agreement, does not
 

language of the contract and found that the relationship between
the two was a non-exclusive one. See id. 

6 The parties' intent is not an issue here, as no
evidence has been presented suggesting that Polychrome intended
an exclusive relationship other than Graphics' obviously self-
serving statements to this effect.

-7-

support Graphics' position.7 The letter nowhere says that it

establishes an exclusive relationship. Graphics contends that,

because the letter sets out the terms of compensation Graphics

was to receive for accounts pursued directly by Polychrome, it

establishes that an exclusive relationship already existed

between the two. In fact, the letter merely specifies

compensation rates for services to be rendered by Graphics to

accounts pursued directly by Polychrome, in exact accordance with

the terms stipulated in the Dealer Agreement, 7.8

Under Law 75, where the conduct of the parties indicates an

intent to continue operating according to the terms of an

Agreement, this Agreement remains in continuing force between
 

7 Paragraph six of the letter states as follows:

6. Graphics Supply and Polychrome will prepare a
joint target account list* [sic] (film and plates) 
of accounts $50,000 or larger in annual volume.
In situations where competitive prices are not
acceptable to Graphics Supply, Polychrome will
pursue the business on a direct basis. Where
Polychrome direct business is obtained, Polychrome
will compensate Graphics Supply based upon annual
account volume. This compensation is for
equipment maintenance and emergency inventory
fulfillment services (emphasis in original).

8 Section 7 of the Dealer Agreement states as follows:

It is agreed that the execution of this Agreement shall
not limit in anyway [sic] Polychrome's right to sell
any Polychrome Products directly to any class of
customers, in any geographical location. However,
Polychrome, at its discretion, may elect to compensate
Dealer for services performed by Dealer for accounts
sold directly to Polychrome.

The letter states: "This compensation is for equipment
maintenance and emergency inventory fulfillment services."

-8-

them, despite any expiration date contained in the Agreement.9 

See Gemco Latinoamerica, Inc. v. Seiko Time Corp., 623 F. Supp. 

912, 918 (D.P.R. 1985). We discern nothing in the record

indicating that the parties intended anything other than to

continue the relationship as set out in the Dealer Agreement. 

Graphics contends that the 1992 letter reveals a new exclusive

relationship, formed because Polychrome wished Graphics to

transfer to it business that Graphics handled for a competitor;

in return for doing so, Graphics alleges that Polychrome agreed

to reappoint Graphics as its sole distributor within Puerto Rico. 

In order for an Agreement to be novated, either the new agreement

must expressly declare that it replaces the old agreement, or the

old and the new agreements must be incompatible in all points. 

See id. at 919 (citing Article 1158 of the Civil Code of Puerto 

Rico, 31 L.R.P.A. 3242). However, as noted above, the letter

mirrors the terms of the continuing non-exclusive Dealer

Agreement. Additionally, it defies credulity to view the letter

as a replacement for the five page extremely detailed non-

exclusive Agreement of January 1, 1989, impliedly -- but without

explicitly saying so -- instituting an exclusive dealership. 

Furthermore, it is logically impossible for Graphics to be

"reappointed" to a status which the prior Agreement did not

 

9 We note that this also counters Graphics' assertion
that the non-exclusive Dealer Agreement had expired.

-9-

confer. The letter is therefore neither a novation nor the

substitution of an exclusive relationship for the existing one.10

The district court summarily dismissed the duress claim,

stating that Graphics had failed to provide sufficient evidence

to support it. Our review of the record supports this

conclusion, as the only evidence presented was Javier's statement

to this effect in his Declaration. As for the purported 1980

Agreement (as reflected in the 1980 Graves letter, see supra note 

1), even were this to be seen as an exclusive relationship, which

we doubt, it is clearly superseded by the 1989 non-exclusive

Dealer Agreement.

3. Summary Judgment on Count IV. 

Count IV alleged that Polychrome breached the Dealer

Agreement by purposefully failing to supply merchandise ordered

by Graphics. Law 75 specifically provides that "when the

principal or grantor unjustifiably refuses or fails to fill the

order for merchandise sent to him by the dealer in reasonable

amounts and within a reasonable time," this shall be presumed to

 

10 We also note that the novation theory may be waived as
it was not presented below. See Teamsters, Chauffeurs, 
Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. 
Co., 953 F.3d 17, 21 (1st Cir. 1992).  

-10-

have impaired the relationship, in contravention of the law. 10

L.R.P.A. 278a-1(b)(3) (1991).11 

The district court, in its April 1, 1996 Opinion and Order, 

originally denied summary judgment on Count IV, saying there was

a genuine issue of material fact regarding Graphics' allegation

that Polychrome had breached the Dealer Agreement by purposely

failing to supply ordered merchandise. However, in its April 25,

1996 Order, the court stated only that it found that Polychrome

was entitled to judgment as a matter of law on all counts

(including Count IV) on the ground that Graphics had not provided

any evidence suggesting the existence of any issues of material

fact. The court therefore issued an order on that same day

dismissing the complaint, and later denied Graphics' motion for

reconsideration. 

We note again that in the summary judgment context, the

party seeking to avoid summary disposition must bring forth

specific, material facts showing a genuine issue for trial. See 

Garside, 895 F.2d at 48 (a fact is material if it could 

potentially affect the suit's outcome); see also Nat'l 

Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 

1995) (an issue concerning such a fact is genuine if a reasonable

factfinder, examining all the evidence and drawing all reasonable

 

11 Law 75 applies to both non-exclusive and exclusive
agreements; the central focus is whether the terms of an
agreement between two parties have been breached. See Vulcan 
Tools v. Makita USA, Inc., 23 F.3d 564, 569 (1st Cir. 1994).  

-11-

inferences helpful to the party resisting summary judgment could

resolve the dispute in this party's favor). 

Graphics' complaint listed two items of support for its

allegation of unfilled orders: first, that Polychrome failed to

supply Graphics with lithographic film for more than nine months

(para 36); and second, that Polychrome failed to supply Graphics

with all the merchandise it had ordered, including lithographic

plates, and to supply Graphics on time with ordered merchandise. 

These failures, Graphics maintains, establish that Polychrome

intentionally impaired the relationship. Graphics' president,

Peter Javier, notes in his Declaration several occasions on which

orders were shipped via air freight rather than via the normal

methods; he maintains this expedited shipping was utilized by

Polychrome because it was not filling orders in a timely manner. 

Polychrome counters by referring to a 1994 sworn statement

(the Colon declaration) indicating that the delays Graphics

experienced were due to a number of factors, none of which was

motivated by an intent to not fully supply Graphics. These

included problems arising from special pricing accorded to

Graphics (which slowed the approval process), and lack of

inventory available for shipment due to the shutdown and

renovation of one of Polychrome's plants. Indeed, Polychrome

points to the air shipments as evidence of its attempt to keep

Graphics as fully supplied as possible in the circumstances. 

Graphics makes no effort to refute the detailed explanations

in the Colon declaration. We are left with no evidence that the

-12-

alleged delays were unjustifiable. Moreover, many of the

documents submitted by the parties that bear on this issue and

might elucidate it are in Spanish, without English

translations.12 Where the existing record is inconclusive, it is

the appellant who must bear the brunt of the insufficient record

on appeal. See Donovan v. Ritchie, 68 F.3d 14, 17 (1st Cir. 

1995); see also Real v. Hogan, 828 F.2d 58, 60 (1st Cir. 1987).  

We are therefore compelled to affirm the district court's

dismissal of this claim, as without further assistance, we are

unable to discern support for Graphics' position in the record. 

4. Count VI: Jurisdictional Minimum. 

Graphics' original Count VI was a claim for debit notes

allegedly due in the amount of $9,500 (see Para 41 of Amended 

Complaint). On appeal, Graphics maintains that the allegation

contained in Count VI was that Polychrome refused to honor debit

notes and intentionally and maliciously withheld sums of money

due to Graphics, specifically $5,522.46 in commissions for

services provided to accounts to which Polychrome had sold

directly.13 However, there is no mention in the original Count
 

12 Furthermore, the district court supplied minimal
reasoning for its volte face on this issue. 

13 This amount is undisputed by the parties, although they
differ as to when payment for this amount was actually issued.
Graphics alleges that the check was issued on March 3, 1995,
whereas Polychrome says it was paid on December 19, 1994. The
photocopy of the check contained in the record bears the date "03
03 95."

-13-

VI of allegedly withheld commissions. We have repeatedly noted

that, absent extraordinary circumstances, a legal theory not

raised squarely in the lower court cannot be broached for the

first time on appeal. See Superline, 953 F.3d at 21. However, 

whether this claim is seen as for $9,500 in debit notes or

$5,522.46 in withheld commissions, the amount falls below the

jurisdictional minimum, and we therefore affirm its dismissal on

this ground. 

Affirmed. 

-14-

-15-