USCA1 Opinion

 

 [NOT FOR PUBLICATION]  United States Court of Appeals For the First Circuit ____________________ No. 96-1888 GRAPHICS SUPPLY, INC., Plaintiff, Appellant, v. POLYCHROME CORPORATION, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Francisco M. Troncoso for appellant. _____________________ Carlos M. Sanchez La Costa with whom Pedro J. Santa-Sanchez __________________________ ______________________ was on brief for appellees. ____________________ June 23, 1997 ___________________ COFFIN, Senior Circuit Judge. This appeal concerns the _____________________ nature of the relationship between two corporate entities. Appellant Graphics Supply contends that an exclusive principal/dealer relationship existed between it and Polychrome Corporation, which was impaired by Polychrome's actions, allegedly in violation of Puerto Rico's Dealer Act. The district court granted summary judgment for Polychrome. We affirm.  FACTS _____ The two parties in the instant appeal are a manufacturer of lithographic supplies, Polychrome Corporation ("Polychrome"), and a Puerto Rico dealer of these supplies, Graphics Supply, Inc. ("Graphics"). Graphics contends that an exclusive dealer  relationship existed between the two entities, and that Polychrome took a series of actions that impaired the relationship, thereby violating Puerto Rico's Law 75, "the Dealer's Act," 10 L.R.P.A. 278. We review the pertinent facts in the light most favorable to Graphics. See Grenier v. Cyanamid ___ _______ ________ Plastics, Inc., 70 F.3d 667, 671 (1st Cir. 1995). ______________ Graphics has served as a dealer for Polychrome in the Puerto Rico market since 1975. On January 1, 1989, a new Dealer Agreement was executed between the two (the "Dealer Agreement"), defining their arrangement as a standard dealer relationship.  While Graphics initially protested signing this new Agreement, contending that it wished to continue the exclusive relationship -2- it maintained existed between the two, Graphics eventually capitulated, at least partially in response to a letter from Polychrome's vice president for legal affairs, Barbara Cane, indicating that the two companies had never had an exclusive relationship and that Graphics' failure to sign the standard dealership agreement might result in a termination of the relationship altogether.1 Graphics asserted that it was assured by individuals at Polychrome that an exclusive relationship would continue to exist, the new Agreement notwithstanding; Polychrome disagrees with this assertion. However, as of April 26, 1996, Graphics concedes that this is a non-exclusive agreement, and does not contend there were private assurances.  The dealings between the two companies apparently deteriorated over the following years, with Graphics contending that Polychrome improperly approached clients directly, and that Polychrome failed to keep Graphics adequately supplied, leading to losses by Graphics. Graphics eventually filed suit against Polychrome, alleging violation of the Puerto Rico Dealer's Act, breach of contract, and tortious interference with the  ____________________ 1 Graphics cites as support for its contention that an exclusive relationship had previously existed a 1980 letter from James M. Graves, executive vice president of Polychrome, to Peter Javier, president of Graphics. This letter (which confirmed the substance of a meeting between Graves and Javier in New York) stated that Polychrome would not actively pursue additional distributors in Puerto Rico, and that Polychrome could continue to sell its products to another Puerto Rico company. It did not, however, state that the relationship between the two would be exclusive.  -3- contractual relationship between Graphics and two of its employees. The district court initially granted Polychrome's Motion for Summary Judgment on four of the six counts brought by Graphics,2 but refused to grant summary judgment on the remaining two  counts, stating that there was a genuine issue of material fact on Count IV, and that Count VI could not be dismissed where Count IV survived.3 However, the district court, on Polychrome's motion for reconsideration, with little explanation for its actions, subsequently granted summary judgment on these counts as well. This appeal by Graphics followed. DISCUSSION __________ 1. Standard of Review. __________________  Our review of the district court's grant of summary judgment is de novo. See Hachikian v. FDIC, 96 F.3d 502, 504 (1st Cir. __ ____ ___ _________ ____  ____________________ 2 These four counts were as follows: Count I: tortious interference by Polychrome with Graphics' contractual relationship with two of its employees; Count II: tortious interference by Polychrome with Graphics' business operations through a series of actions; Count III: violation of Law 75 by Polychrome by selling its products directly to several of its customers in Puerto Rico; and Count V: violation by Polychrome of Law 75 by negotiating with potential distributors in the Dominican Republic. 3 Count IV alleged that Polychrome breached their contract by purposely failing to supply ordered merchandise; Count VI alleged that Polychrome failed to honor debit notes submitted by Graphics to Polychrome.  -4- 1996). We may affirm on the grounds cited by the district court, or on any independently sufficient ground. See Garside v. Osco ___ _______ ____ Drugs, Inc., 895 F.2d 46, 49 (1st Cir. 1990).  ___________ Graphics appeals three issues: first, the district court's determination that a non-exclusive relationship existed between Polychrome and Graphics;4 second, the grant of summary judgment on Count IV; and finally, the grant of summary judgment on Count VI. We address each in turn.   2. Nature of the Dealer Agreement. ______________________________  As noted above, Graphics contends that the district court erred in concluding that the parties did not have an exclusive relationship. Our starting point in reviewing this determination must be the language of the Dealer Agreement between Graphics and Polychrome, as it is well established that the interpretation of such a contract under Puerto Rico law is limited to the terms of the Agreement, barring ambiguities in those terms or apparent inconsistency with the contracting parties' intent. See Borschow ___ ________ Hosp. & Medical v. Cesar Castillo, 96 F.3d 10, 15 (1st Cir. _______________ ______________ 1996); see also Vulcan Tools of Puerto Rico v. Makita USA, Inc., ___ ____ ___________________________ ________________ 23 F.3d 564, 567 (1st Cir. 1994); Marina Ind. Inc. v. Brown ________________ _____  ____________________ 4 Graphics casts this issue as an appeal on Counts III & V; Polychrome, on the other hand, addresses this issue as relating to Counts II and III. The district court, for its part, primarily addressed this issue in its discussion of Count III. -5- Boveri Corp., 114 P.R. Offic. Trans. 64, 72 (1983). Indeed ____________ Article 1233 of the Puerto Rico Civil Code provides: If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed. If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail.  31 L.R.P.A. 3471 (1991). The 1989 Dealer Agreement between Graphics and Polychrome states in section 1, "Purpose of Agreement":  The purpose of this Agreement is to set forth the relationship of Polychrome and dealer and to reduce to writing their entire Agreement.  Polychrome agrees to sell to dealer, on a ____ non-exclusive basis, such of the Polychrome ___________________ Products of the Printing Division (Polychrome Products) that from time to time Polychrome may elect to make available to the Dealer (emphasis added). The language of the Agreement unambiguously states that the relationship established is a non-exclusive one. Furthermore, the Agreement stipulates that it constitutes the full Agreement between the parties. See Borschow, 96 F.3d at 16 (integration ___ ________ clause nullifies any other oral or written understandings reached between the two parties).5 In addition to these terms, the  ____________________ 5 We note that the conduct in Borschow was much more ________ egregious than that alleged here. Here, there is a dispute as to whether Polychrome ever made representations to Graphics that an exclusive relationship between the two was either intended or contemplated. In Borschow, the manufacturer's representative ________ explicitly assured the dealer that an exclusive relationship was intended, notwithstanding the non-exclusive language in the contract between the two, and the representative subsequently sent the dealer a document to that effect. See Borschow Hosp. & ___ ________________ Medical v. Cesar Castillo, 96 F.3d 10, 12-13 (1st Cir. 1996). _______ _______________ However, even in that situation, the court adhered to the -6- Agreement contains other terms indicating that a non-exclusive relationship is contemplated. For example, it explicitly reserves to Polychrome the right to sell directly to any class of customers and to appoint other dealers. Graphics offers several theories as to why we should disregard the Dealer Agreement's clear terms and find instead that an exclusive relationship existed: the company alleges that an earlier, 1980 agreement established an exclusive arrangement; it claims that the new Agreement was signed under duress; and most importantly, it alleges that the non-exclusive agreement was either altered or replaced by a new one reflected in a January 1, 1992 letter from a Polychrome official to Graphics.  We note at the outset that much of the information upon which Graphics hangs its hat is patently inadmissible since the language of the Agreement is clear. See Borschow, 96 F.3d at ___ ________ 15-16 (Puerto Rico Civil Code and parol evidence rule both preclude reference to extrinsic evidence where contract terms are clear). It is therefore unnecessary to dwell on these allegations; however, we choose to dispose of them briefly.6 The January 1, 1992 letter, which Graphics suggests is either a novation or a substitution of an exclusive Agreement for the non-exclusive one created by the Dealer Agreement, does not  ____________________ language of the contract and found that the relationship between the two was a non-exclusive one. See id. ___ __ 6 The parties' intent is not an issue here, as no evidence has been presented suggesting that Polychrome intended an exclusive relationship other than Graphics' obviously self- serving statements to this effect. -7- support Graphics' position.7 The letter nowhere says that it establishes an exclusive relationship. Graphics contends that, because the letter sets out the terms of compensation Graphics was to receive for accounts pursued directly by Polychrome, it establishes that an exclusive relationship already existed between the two. In fact, the letter merely specifies compensation rates for services to be rendered by Graphics to accounts pursued directly by Polychrome, in exact accordance with the terms stipulated in the Dealer Agreement, 7.8 Under Law 75, where the conduct of the parties indicates an intent to continue operating according to the terms of an Agreement, this Agreement remains in continuing force between  ____________________ 7 Paragraph six of the letter states as follows: 6. Graphics Supply and Polychrome will prepare a joint target account list* [sic] (film and plates) ____________________ of accounts $50,000 or larger in annual volume. In situations where competitive prices are not acceptable to Graphics Supply, Polychrome will pursue the business on a direct basis. Where Polychrome direct business is obtained, Polychrome will compensate Graphics Supply based upon annual account volume. This compensation is for equipment maintenance and emergency inventory fulfillment services (emphasis in original). 8 Section 7 of the Dealer Agreement states as follows: It is agreed that the execution of this Agreement shall not limit in anyway [sic] Polychrome's right to sell any Polychrome Products directly to any class of customers, in any geographical location. However, Polychrome, at its discretion, may elect to compensate Dealer for services performed by Dealer for accounts sold directly to Polychrome. The letter states: "This compensation is for equipment maintenance and emergency inventory fulfillment services." -8- them, despite any expiration date contained in the Agreement.9  See Gemco Latinoamerica, Inc. v. Seiko Time Corp., 623 F. Supp. ___ _________________________ ________________ 912, 918 (D.P.R. 1985). We discern nothing in the record indicating that the parties intended anything other than to continue the relationship as set out in the Dealer Agreement.  Graphics contends that the 1992 letter reveals a new exclusive relationship, formed because Polychrome wished Graphics to transfer to it business that Graphics handled for a competitor; in return for doing so, Graphics alleges that Polychrome agreed to reappoint Graphics as its sole distributor within Puerto Rico.  In order for an Agreement to be novated, either the new agreement must expressly declare that it replaces the old agreement, or the old and the new agreements must be incompatible in all points.  See id. at 919 (citing Article 1158 of the Civil Code of Puerto ___ __ Rico, 31 L.R.P.A. 3242). However, as noted above, the letter mirrors the terms of the continuing non-exclusive Dealer Agreement. Additionally, it defies credulity to view the letter as a replacement for the five page extremely detailed non- exclusive Agreement of January 1, 1989, impliedly -- but without explicitly saying so -- instituting an exclusive dealership.  Furthermore, it is logically impossible for Graphics to be "reappointed" to a status which the prior Agreement did not  ____________________ 9 We note that this also counters Graphics' assertion that the non-exclusive Dealer Agreement had expired. -9- confer. The letter is therefore neither a novation nor the substitution of an exclusive relationship for the existing one.10 The district court summarily dismissed the duress claim, stating that Graphics had failed to provide sufficient evidence to support it. Our review of the record supports this conclusion, as the only evidence presented was Javier's statement to this effect in his Declaration. As for the purported 1980 Agreement (as reflected in the 1980 Graves letter, see supra note ___ _____ 1), even were this to be seen as an exclusive relationship, which we doubt, it is clearly superseded by the 1989 non-exclusive Dealer Agreement.  3. Summary Judgment on Count IV. ____________________________  Count IV alleged that Polychrome breached the Dealer Agreement by purposefully failing to supply merchandise ordered by Graphics. Law 75 specifically provides that "when the principal or grantor unjustifiably refuses or fails to fill the order for merchandise sent to him by the dealer in reasonable amounts and within a reasonable time," this shall be presumed to  ____________________ 10 We also note that the novation theory may be waived as it was not presented below. See Teamsters, Chauffeurs, ___ _______________________ Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. ___________________________________________ _________________ Co., 953 F.3d 17, 21 (1st Cir. 1992).  ___ -10- have impaired the relationship, in contravention of the law. 10 L.R.P.A. 278a-1(b)(3) (1991).11  The district court, in its April 1, 1996 Opinion and Order,  originally denied summary judgment on Count IV, saying there was a genuine issue of material fact regarding Graphics' allegation that Polychrome had breached the Dealer Agreement by purposely failing to supply ordered merchandise. However, in its April 25, 1996 Order, the court stated only that it found that Polychrome was entitled to judgment as a matter of law on all counts (including Count IV) on the ground that Graphics had not provided any evidence suggesting the existence of any issues of material fact. The court therefore issued an order on that same day dismissing the complaint, and later denied Graphics' motion for reconsideration.  We note again that in the summary judgment context, the party seeking to avoid summary disposition must bring forth specific, material facts showing a genuine issue for trial. See ___ Garside, 895 F.2d at 48 (a fact is material if it could _______ potentially affect the suit's outcome); see also Nat'l ___ ____ _____ Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. ________________ ______________ 1995) (an issue concerning such a fact is genuine if a reasonable factfinder, examining all the evidence and drawing all reasonable  ____________________ 11 Law 75 applies to both non-exclusive and exclusive agreements; the central focus is whether the terms of an agreement between two parties have been breached. See Vulcan ___ ______ Tools v. Makita USA, Inc., 23 F.3d 564, 569 (1st Cir. 1994).  _____ ________________ -11- inferences helpful to the party resisting summary judgment could resolve the dispute in this party's favor).  Graphics' complaint listed two items of support for its allegation of unfilled orders: first, that Polychrome failed to supply Graphics with lithographic film for more than nine months (para 36); and second, that Polychrome failed to supply Graphics with all the merchandise it had ordered, including lithographic plates, and to supply Graphics on time with ordered merchandise.  These failures, Graphics maintains, establish that Polychrome intentionally impaired the relationship. Graphics' president, Peter Javier, notes in his Declaration several occasions on which orders were shipped via air freight rather than via the normal methods; he maintains this expedited shipping was utilized by Polychrome because it was not filling orders in a timely manner.  Polychrome counters by referring to a 1994 sworn statement (the Colon declaration) indicating that the delays Graphics experienced were due to a number of factors, none of which was motivated by an intent to not fully supply Graphics. These included problems arising from special pricing accorded to Graphics (which slowed the approval process), and lack of inventory available for shipment due to the shutdown and renovation of one of Polychrome's plants. Indeed, Polychrome points to the air shipments as evidence of its attempt to keep Graphics as fully supplied as possible in the circumstances.  Graphics makes no effort to refute the detailed explanations in the Colon declaration. We are left with no evidence that the -12- alleged delays were unjustifiable. Moreover, many of the documents submitted by the parties that bear on this issue and might elucidate it are in Spanish, without English translations.12 Where the existing record is inconclusive, it is the appellant who must bear the brunt of the insufficient record on appeal. See Donovan v. Ritchie, 68 F.3d 14, 17 (1st Cir. ___ _______ _______ 1995); see also Real v. Hogan, 828 F.2d 58, 60 (1st Cir. 1987).  ___ ____ ____ _____ We are therefore compelled to affirm the district court's dismissal of this claim, as without further assistance, we are unable to discern support for Graphics' position in the record.  4. Count VI: Jurisdictional Minimum. _________________________________  Graphics' original Count VI was a claim for debit notes allegedly due in the amount of $9,500 (see Para 41 of Amended ___ Complaint). On appeal, Graphics maintains that the allegation contained in Count VI was that Polychrome refused to honor debit notes and intentionally and maliciously withheld sums of money due to Graphics, specifically $5,522.46 in commissions for services provided to accounts to which Polychrome had sold directly.13 However, there is no mention in the original Count  ____________________ 12 Furthermore, the district court supplied minimal reasoning for its volte face on this issue.  13 This amount is undisputed by the parties, although they differ as to when payment for this amount was actually issued. Graphics alleges that the check was issued on March 3, 1995, whereas Polychrome says it was paid on December 19, 1994. The photocopy of the check contained in the record bears the date "03 03 95." -13- VI of allegedly withheld commissions. We have repeatedly noted that, absent extraordinary circumstances, a legal theory not raised squarely in the lower court cannot be broached for the first time on appeal. See Superline, 953 F.3d at 21. However, ___ _________ whether this claim is seen as for $9,500 in debit notes or $5,522.46 in withheld commissions, the amount falls below the jurisdictional minimum, and we therefore affirm its dismissal on this ground.   Affirmed. ________    -14-    -15-